1   Robert M. Gilchrest (SBN 134254)
2   rgilchrest@silverfirm.com
    SILVERMAN SCLAR SHIN & BYRNE LLP
3   500 S. Grand Avenue, Suite 1900
4   Los Angeles, California 90071
    Telephone: (213) 683-5350
5   Facsimile:  (213) 627-7795
6
    Attorneys for Plaintiffs
7   BIKRAM'S YOGA COLLEGE OF INDIA, L.P.
8   and BIKRAM CHOUDHURY
9
10            UNITED STATES DISTRICT COURT
11            CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  BIKRAM'S YOGA COLLEGE OF<br>INDIA, L.P.; a California limited<br>14  partnership; BIKRAM CHOUDHURY,<br>15  an Individual,<br><br>16            Plaintiffs,<br>17<br>18         v.<br>19  YOGA TO THE PEOPLE, INC.,  a<br>20  Washington corporation; GREGORY<br>GUMUCIO, an Individual; and DOES<br>21  1 through 10, inclusive,<br>22<br>23            Defendants. | CASE NO.<br>CV11 - 07998 DMG(FMOx)<br>COMPLAINT FOR:<br><br>1. **COPYRIGHT INFRINGEMENT;**<br>2. **TRADEMARK INFRINGEMENT;**<br>3. **FALSE DESIGNATION OF<br>   ORIGIN;**<br>4. **DILUTION;**<br>5. **UNFAIR COMPETITION;**<br>6. **UNFAIR BUSINESS PRACTICES;**<br>7. **BREACH OF CONTRACT; AND**<br>8. **INDUCING BREACH OF<br>   CONTRACT.**<br><br>24  **(JURY TRIAL DEMANDED)** |

25
26
27
28

Complaint - 1

1    Plaintiffs, Bikram's Yoga College of India, L.P. and Bikram Choudhury,
2  hereby aver as follows:

### JURISDICTION AND VENUE

4    1.    This is an action for copyright infringement arising under the
5  Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.,* trademark infringement under 15
6  U.S.C. § 1114, false designation of origin under the Lanham Act, 15 U.S.C. §
7  1125(a), and trademark dilution under 15 U.S.C. § 1125(c). This Court has
8  jurisdiction of this action under 28 U.S.C. §§ 1331, 1337, 1338(a), 1338 (b) and 15
9  U.S.C. § 1121. This Court has supplemental jurisdiction over the state law claims
10  in that those claims are so related to the federal claims that they form part of the
11  same case or controversy.
12    2.    This Court has personal jurisdiction over the Defendants in that
13  Defendants have consented to personal jurisdiction in this District, have knowingly
14  conspired with Defendants who have consented to personal jurisdiction in this
15  District and/or have engaged in many of the acts of infringement, unfair
16  competition and state law claims complained of herein in this District.
17    3.    Venue is proper in this District under 28 U.S.C. §§ 1391 in that: (a) a
18  substantial part of the events or omissions giving rise to the claims herein occurred
19  in this District; (b) Defendants have consented to venue in this District pursuant to
20  an agreement entered into in this Judicial District; and/or conspired with
21  Defendants who thereby have consented to venue in this District.

### INTRODUCTION

23    4.    This is an action for copyright and trademark infringement, false
24  designation of origin, dilution, unfair competition, unfair business practices, breach
25  of contract and inducing breach of contract brought by Plaintiffs Bikram's Yoga
26  College of India, L.P. ("BYCI") and Bikram Choudhury ("Bikram"), a world-
27  renowned yoga guru who developed the unique brand of yoga known as "Bikram
28  Yoga." Bikram founded BYCI. Since as early as 1971, Bikram has conducted

business under the names "Bikram's Yoga" and "Bikram Yoga."  And since as early as 1978, Bikram has created and registered copyrighted works, trademarks, trade names and logos.

5.    Bikram has licensed those copyrighted works, trademarks, trade names and logos (sometimes referred to in this complaint as "Bikram's IP") to BYCI.  And together, Bikram and BYCI have used Bikram's IP continuously and extensively in brochures, newsletters, bulletins and other publications.  As a result, Bikram's IP has become well and favorably known in the United States (including California and this Judicial District) and abroad for its association with Bikram Yoga.  Bikram's IP has become a valuable component of Bikram and Bikram Yoga's reputation and goodwill.  The copyrighted works, trademarks, trade names and logos comprising Bikram's IP are known and recognized as such by the public.

6.    Defendant Gregory Gumucio is a former certified Bikram Yoga teacher.  Before becoming a certified Bikram Yoga teacher, Gumucio entered into an agreement which restricts his use of Bikram's IP to, among other things, teaching Bikram Yoga classes in Bikram Yoga studios in compliance with the dialogue and posture sequence taught to him.  In addition, the agreement and settled law prohibits Gumucio from: (a) publishing, displaying, advertising, broadcasting or using, in any manner whatsoever, any of Bikram's trademarks, service marks, copyrights, logos, photographs or likeness; (b) publishing, exhibiting or demonstrating any Bikram method or posture by or through any medium or publication (electronic or otherwise), including books, magazines, film, photographs or electronic images; (c) producing, distributing and/or selling products that substantially and materially copy and/or are derived from Bikram's copyrighted works or trademarks; and/or (d) training or giving instruction to others in connection with or towards completion of a teacher training certificate permitting the holder to teach Bikram Yoga or any form of yoga derived from Bikram Yoga.

7.      Gumucio owns defendant Yoga to the People ("YTTP").  YTTP offers a number of yoga classes, including a class named "Traditional Hot Yoga." Gumucio named the class "Traditional Hot Yoga" in order to conceal the fact that the class incorporates and infringes upon, among other things, Bikram's copyrighted Asana Sequence and Dialogue.  Moreover, the YTTP "Traditional Hot Yoga" class is taught in the same ambient environment as Bikram Yoga in order to give students the impression that the class offers the same experience and benefits a student would have at a Bikram Yoga studio. In addition, Gumucio has employed certified Bikram Yoga instructors and Bikram Yoga imposter instructors trained and purportedly certified by Gumucio to teach his deceptively named and infringing "Traditional Hot Yoga" class.

8.      Recently, Gumucio has attempted to justify his and YTTP's blatant infringing conduct by, in essence, likening himself to the "Napster, Inc./Grokster, Ltd." of the hot yoga world.  Thus, much like the business model of Napster and Grokster of yester-year who made available to the public the means by which to enjoy the copyrighted music owned and controlled exclusively by others at a discounted rate or for free, Gumucio offers Bikram Yoga under the deceptively named and infringing "Traditional Hot Yoga" moniker at $8 per class at YTTP because, in Gumucio's own words: "[i]n New York, you're paying $20 to $25 a class....To me, that was just very cost prohibitive.  Our commitment was to give the less financially able an opportunity to practice."

9.      Gumucio and YTTP: (a) do not own Bikram's IP; (b) have no right, title or interest in or to the Bikram Yoga style and method, including the Marks, the Dialogue or other of Bikram's Copyrighted Works; and (c) are not authorized to offer the deceptively named and infringing "Traditional Hot Yoga" class at YTTP at any price whatsoever.  Moreover, the fact that Gumucio and YTTP publicly boast of their unlawful conduct even after being put on notice that the conduct is unlawful, unethical and immoral is proof positive that they show no

remorse or intent of ending their unlawful conduct.  Defendants have acted intentionally, willfully, maliciously, and with conscious indifference to the consequences, which actions and intentions constitute aggravating circumstances. Thus, in addition to compensatory damages and a permanent injunction against Defendants, their conduct warrants, among other things, the award of punitive damages, attorney's fees and costs of suit herein. This action is brought to require defendants to answer for their despicable conduct and to pay the consequences of the same.

## THE PARTIES

10.    Plaintiff Bikram's Yoga College of India, L.P. ("BYCI"), is, and at all times relevant hereto was, a California limited partnership.  BYCI exists under the laws of the State of California and its principal place of business is located in Los Angeles, California.

11.    Plaintiff Bikram Choudhury ("Bikram") is, and at all times relevant hereto was, a citizen of the United States of America, and a resident of Los Angeles, California.  Bikram and his wife, Rajashree Choudhury, are the partners of BYCI.

12.    Defendant Yoga To The People ("YTTP") is, and at all times relevant hereto was, a corporation existing and operating under the laws of the State of Washington.  YTTP has yoga studios in San Francisco, CA, Berkeley, CA, New York, NY, and Seattle, WA.  YTTP does business in California.  In addition, YTTP has conspired with others (including defendant Gregory Gumucio) who have consented to venue in this Judicial District and, thereby, has consented to venue in this Judicial District.

13.    Defendant Gregory Gumucio is, and at all times relevant hereto was, a citizen of the United States of America and resides in or around New York, New York.  Gumucio founded and owns YTTP.  Gumucio has conspired with

1  individuals who have consented to venue in this Judicial District and, thereby, has

2  consented to venue in this Judicial District.

3      14.    The true names and capacities of defendants Does 1 through 10,

4  inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such

5  fictitious names.  In performing the acts or omissions described in this Complaint,

6  defendants YTTP and Gumucio, and Does 1 through 10 (collectively,

7  "Defendants") were each acting as the representative, agent, employee or alter ego

8  of each other.  All acts or omissions described in this Complaint were performed in

9  the course and scope of this agency with the knowledge or consent of each of the

10  Defendants and contributed to the harm to Plaintiffs alleged herein.  As soon as the

11  true names of Does 1 through 10 have been ascertained, Plaintiffs will amend this

12  complaint accordingly.

## FACTUAL SUMMARY

13  
14      **Bikram's Yoga**

15      15.    Bikram is recognized as one of the preeminent Hatha Yoga Masters

16  and Gurus living today.  After years of research, Bikram discovered and developed

17  his unique brand of yoga known as "Bikram Yoga" (also known as "Bikram's

18  Basic Yoga System," "Bikram's Beginning Yoga Class" or "Bikram's Yoga").

19      16.    Bikram Yoga is a proprietary and discrete series of twenty-six (26)

20  yoga positions and two (2) breathing exercises, which are always performed in

21  precisely the same sequence, in a room heated to at least 105° Fahrenheit.  The

22  postures and exercises are accompanied by a rigidly prescribed series of oral

23  instructions and commands.  Bikram Yoga is performed for precisely ninety (90)

24  minutes.  The very essence of Bikram Yoga is that its postures are performed in

25  exactly the same sequence, with exactly the same instructions and commands, in a

26  room heated to 105° Fahrenheit, in every class.  The intended benefits from Bikram

27  Yoga can only be derived if the yoga class is performed precisely as Bikram

28  developed it.

17.     In about 1971, Bikram began offering Bikram Yoga classes through his facilities at Bikram's Yoga College of India, in Los Angeles, California.

18.     Bikram Yoga soon became extremely popular.  Public demand for Bikram Yoga classes grew steadily once Bikram Yoga participants realized that Bikram's unique yoga style and method offered them tremendous physical, mental and other benefits.  Bikram Yoga has become recognized throughout the world not only for its exceptional benefits, but for its distinctive method, style, instructions, and commands.  Over 500 facilities worldwide are now authorized to offer Bikram Yoga.

19.     As the demand for Bikram Yoga increased, Bikram saw the need for a regimented, quality-controlled program designed to train others in the art of teaching the Bikram Yoga method and style.  Consequently, in or about 1994, Bikram inaugurated a Bikram Yoga Teacher Training Course.

20.     Before beginning the Bikram Yoga Teacher Training Course, each teacher trainee is required to sign a teacher training contract (the "Teacher Training Agreement") and is provided with a signed copy of the Agreement.  In addition, each teacher trainee is aware that fellow teacher trainees are required to sign the Agreement.  Under the Bikram Yoga Teacher Training Course, individuals who desire to lead and instruct classes in Bikram Yoga pay $10,000 for tuition, materials and room and board to attend a nine-week residential teacher training program, and in return receive instruction and training in the Bikram Yoga method and style.  Those who successfully satisfy the high standards set by Bikram and master the academic and physical requirements earn their certification as teachers of "Bikram's Basic Yoga System."  Only Bikram himself may grant certification as a Bikram Basic Yoga System teacher.  And only certified Bikram Yoga instructors can teach at Bikram Yoga studios.  To date, Bikram has trained and certified over six thousand three hundred Bikram Basic Yoga System teachers in his unique style and method.

21.    Certified teachers receive a limited license to teach Bikram's Basic
Yoga System and to use Bikram's trademarks and copyrighted works in connection
therewith, provided that they agree to teach Bikram's Basic Yoga System precisely
as it was taught to them and to abide by strict guidelines set by Bikram with regard
to their status as certified Bikram's Basic Yoga System teachers.  In part to ensure
the uniform interpretation and enforcement of the Teacher Training Agreement and
the preservation and protection of Bikram's IP, the Agreement is governed by the
laws of the State of California and requires that any action filed to enforce the
Agreement and any matters related to Bikram Yoga be brought in either the state
or federal courts located in Los Angeles County, California.

**Bikram's IP**

22.    Bikram Yoga incorporates several protectable elements, each
developed and owned exclusively by Bikram.

23.    Bikram's twenty-six (26) yoga postures together with two (2)
breathing exercises, all of which are always performed in exactly the same strictly
prescribed sequence, in a room heated to at least 105° Fahrenheit, differentiate
Bikram Yoga from all other forms of yoga and other types of exercise.  The style,
method, design, and structure of Bikram Yoga are unique and distinctive.  The
Bikram Yoga method consists of several distinct and highly recognizable features.
These twenty-six (26) distinctive postures and two (2) breathing exercises have
become so distinctive in the marketplace of yoga classes that they have acquired
fame and secondary meaning and therefore serve as a designation of the source and
sponsorship of this type of yoga.  Indeed, Bikram Yoga is so distinctive in overall
appearance, structure, format, and choreography that it is recognizable in
marketplaces throughout the world.

24.    The Bikram Yoga method, including but not limited to the unique
selection, sequence, and number of yoga postures and breathing exercises, together
with the element of a room heated to at least 105° Fahrenheit, combine to convey a

unique and distinctive overall image and impression constituting a federally-protected service mark owned exclusively by Bikram (the "Bikram Asana Sequence" or "Asana Sequence").

### Bikram's Copyrighted Works

25.    As part of his development of the Bikram Yoga style and method, Bikram created an original work of authorship consisting of a series of instructions and commands that accompany, and correspond to, each posture of Bikram Yoga (the "Dialogue").  This original work is recited in a precise manner, in the form of a spoken dialogue, by a certified Bikram's Basic Yoga System teacher during each Bikram Yoga session.

26.    The purposes for the strict requirement that the Dialogue is to be recited in a precise manner are: (a) to maintain quality control over Bikram's Basic Yoga System, since the benefits of the System will not be derived if the yoga is done incorrectly; (b) to ensure uniformity from teacher to teacher and school to school in the teaching of the postures; and (c) to allow students to focus on improving their practice of the Yoga since the Dialogue becomes ingrained and eventually acts almost like a "mantra."

27.    Bikram fixed the Dialogue in a tangible medium of expression.

28.    Bikram is the owner of the copyrightable work of authorship in the Dialogue and the U.S. copyright registration in the Dialogue, and duly possesses all rights, title, and interests therein.  Bikram has complied with all of the laws pertinent to the Dialogue as a copyrighted work.

29.    Bikram is the sole author of a book entitled "Bikram's Beginning Yoga Class" (the "Book") written in 1978 and first published in 1979.  The Book contains, among other things, a description of the Bikram Asana Sequence.   The United States Copyright Office issued Copyright Registration Certificate No. TX 170-160 to Bikram for the Book.  In 2000, Bikram published a revised version of

1  the Book, and the Copyright Office issued Copyright Registration Certificate No.
2  TX 5-259-325 to Bikram for this edition.

3      30.    The Copyright Office also issued to Bikram Copyright Registration
4  Certificate No. TX 5-624-003 for the Bikram Asana Sequence.  Because the
5  Bikram Asana Sequence was first published in the Book, the Copyright Office
6  directed Bikram to register the Bikram Asana Sequence as "selection of
7  arrangement of exercise" or "compilation of exercises" by submitting a
8  supplemental application to Registration No. TX 170-160 for the Book.

9      31.    The Copyright Office has issued to Bikram several additional
10 Copyright Registrations: (a) Certificate No. TX 1-022-657 for the work entitled
11 "Bikram's Yoga College Of India Beginning Yoga Dialogue"; (b) Certificate No.
12 TX 6-555-860 for the "Bikram's Beginning Yoga Class" audiotape (the "Audio-
13 Tape"); (c) Certificate No. TXu 934-417 for the work entitled "Bikram's Yoga
14 College of India Teacher Training Course-Curriculum Outline"; (d) Certificate No.
15 TXu 1-323-218 for Bikram's Advance Yoga Class Asana Sequence; and
16 (e) Certificate No. PA 1-053-335 for a videocassette entitled "Rajashree's
17 Pregnancy Yoga," which is co-registered with Rajashree Choudhury.

18     32.    Bikram is the owner of the copyrighted works set forth in the
19 foregoing paragraphs and the U.S. copyright registrations issued by the Copyright
20 Office.  Therefore, Bikram duly possesses all rights, title, and interest therein.
21 Bikram has complied with all of the laws pertinent to the works set forth in the
22 preceding paragraphs as copyrighted works.

23     **Bikram's Trademarks, Service Marks, Trade Names And Logos**

24     33.    Bikram owns several trademarks, service marks, trade names and
25 logos (collectively, "the Marks") used in connection with this business and Bikram
26 Yoga, including, among others:

27          (a) "BIKRAM YOGA", registered August 5, 2003, Registration
28               Number 2,746,346;

(b) "BIKRAM'S YOGA COLLEGE OF INDIA", registered May 27, 2003, Registration Number 2,718,899;

(c) "BIKRAM'S BEGINNING YOGA CLASS", registered April 6, 2004, Registration Number 2,829,135;

(d) A design mark of Bikram in the spine twisting pose, registered October 21, 2003, Registration Number 2,775,407;

(e) BIKRAM'S BASIC YOGA SYSTEM; and

(f) BIKRAM'S ASANA SEQUENCE OF 26 YOGA POSTURES.

34.    Therefore, Bikram duly possesses all rights, title, and interests in and to the Marks.  And Bikram has complied with all of the laws pertinent to Marks set forth in the proceeding paragraph.

35.    Bikram and BYCI have spent significant time and money creating, developing, maintaining and controlling Bikram's IP and have used the same to advertise, promote and market Bikram Yoga classes.  Bikram and BYCI have used Bikram's IP for more educational services, namely, conducting classes, seminars, conferences, and teacher training in Bikram Yoga and yoga philosophy.

**Gumucio Becomes A Certified Bikram Instructor And Agrees To A Limited Right To Use Bikram's IP**

36.    In or about Spring of 1996, defendant Gumucio enrolled in Bikram's Yoga College of India Teacher Training Course in Los Angeles.  Gumucio successfully completed the course, and thus became authorized under a limited license agreement, described below, to teach Bikram's Basic Yoga System.

37.    Before starting the course, Gumucio agreed to certain limited license rights (the "License") related to use Bikram's unique yoga style and method.  The terms of the License included the following rights and licenses:

(a) to teach Bikram's Basic Yoga System classes in strict compliance with guidelines established by Bikram;

(b) to publicly recite the Dialogue and demonstrate the Asana Sequence during the course of teaching the Bikram's Basic Yoga System classes in strict conformity with the methods taught during the Teacher Training Course;

(c) to use the Marks for purposes of identifying classes taught in strict conformity with the methods taught during the Teacher Training Course.

38.     Gumucio also agreed to refrain from doing the following:

(a) to publish, display, advertise, broadcast, or use, in any manner whatsoever, any of Bikram's trademarks, service marks, copyrights, logos, photograph or likeness;

(b) to publish, exhibit or demonstrate any Bikram method or posture by or through any medium or publication (electronic or otherwise), including books, magazines, film, photographs or electronic images;

(c) to produce, distribute and sell products that substantially and materially copy and/or are derived from Bikram's copyrighted works or trademarks;

(d) to train or give instruction to others in connection with or towards completion of a teacher training certificate permitting the holder to teach Bikram Yoga or any form of yoga derived from Bikram Yoga;

(e) to use Bikram's copyrighted works and trademarks in connection with any variations of Bikram's Basic Yoga System; or

(f) to alter the Dialogue or Asana Sequence in any way.

39.     Gumucio was advised and understood that failure to strictly conform to the terms of the License would result in termination of the License and preclude

him from using any Bikram Copyrights or Marks, or holding himself out as a
certified Bikram Yoga teacher.

**Gumucio Helps Run Bikram Yoga Teacher Training Sessions, During
Which Gumucio Repeatedly Acknowledges And Reaffirms His Limited
Rights To the Use Of Bikram's IP and Instructs Teacher Trainees Of
Their Limited Rights To Use Bikram's IP**

40.     Bikram Teacher Training is run by Bikram, senior Bikram Yoga
instructors of Bikram Yoga, staff instructors and visiting instructors.  Those who
request and are invited to be staff or visiting instructors at Bikram Yoga Teacher
Training acknowledge and reaffirm their commitment to abide by the limited rights
and prohibitions to which they previously agreed.

41.     Gumucio lived in Seattle, Washington immediately after becoming a
certified Bikram Yoga instructor.  Gumucio admits that, while living in Seattle, he
commuted to Los Angeles to help run Bikram Teacher Training Sessions.

42.     During the time Gumucio helped run Bikram Yoga training sessions,
Gumucio acknowledged and reaffirmed his agreement to the limited use of
Bikram's IP by, among other things, instructing the teacher trainees of the rights set
forth in paragraph 37 above as well as the prohibitions set forth in paragraph 38
above.

43.     Gumucio acknowledged and reaffirmed his agreement to the limited
use of Bikram's IP by causing the teacher trainees to sign teacher training
agreements that, among other things, evidenced each teacher trainee's knowledge
and agreement to the limited rights set forth in paragraph 37 above as well as the
prohibitions set forth in paragraph 38 above.

**Reminiscent Of Napster And Grokster Of Yester-Year, Gumucio Recently Admits Publicly That He And "Yoga To The People" Studios Infringe On Bikram's IP To Make Bikram Yoga Available At A Cheaper Rate**

44.     Gumucio now lives in New York City.  In recent months, Gamucio has admitted publicly that his "Yoga to the People" offers a hot yoga class that "consists of 2 breathing exercises and a series of 26 poses incorporating balance, strength and flexibility" and is "done in a heated room of 105-108 degrees."

45.     Gumucio also has admitted that "[t]he idea of Yoga for the People came to [him] because of Bikram."  He has openly boasted that: (a) "[w]e do offer the same kind of yoga at a much cheaper rate and we're obviously doing a really good job"; and (b) "[i]n New York, you're paying $20 to $25 a class....To me, that was just very cost prohibitive.  Our commitment was to give the less financially able an opportunity to practice."

46.     Following Gumucio's public boasting, Bikram learned that "Yoga to the People" ("YTTP") offers several different yoga classes, including one deceptively named "Traditional Hot Yoga."  Bikram has confirmed that the YTTP "Traditional Hot Yoga" class incorporates and infringes upon, among other things, Bikram's copyrighted Asana Sequence and Dialogue.  Bikram also confirmed that the YTTP "Traditional Hot Yoga" class is taught in the same ambient environment as Bikram Yoga in order to give students the impression that the class offers the same experience and benefits a student would have at a Bikram Yoga studio.

47.     In addition, Bikram has learned that Gumucio and YTTP have employed certified Bikram Yoga instructors to teach the deceptively named and infringing "Traditional Hot Yoga" at YTTP.  Gumucio and YTTP have also trained imposter instructors to teach the deceptively named and infringing "Traditional Hot Yoga" at YTTP.

48.     By offering the deceptively named and infringing "Traditional Hot Yoga" at YTTP at a cheaper price per class, Gumucio and YTTP fancy themselves as the hot yoga equivalent of Napster or Grokster.  However, like was the case in the old Napster and Grokster disputes, Gumucio and YTTP: (a) do not own Bikram's IP; (b) have no right, title or interest in or to the Bikram Yoga style and method, including the Marks, the Dialogue or other of Bikram's Copyrighted Works; and (c) are not authorized to offer the deceptively named and infringing "Traditional Hot Yoga" class at YTTP at a cheaper price or for free.  Nevertheless, Gumucio and YTTP continue to use the Bikram Yoga Style and method, and constituent components thereof, without the permission of Bikram by:

       (a) offering yoga classes employing the elements of Bikram Yoga, including the twenty-six (26) postures and two (2) breathing exercises specifically prescribed in Bikram Yoga in the same Asana Sequence, but altering the number of sets of each posture done during a class;

       (b) offering yoga classes employing the elements of Bikram Yoga, including the twenty-six (26) postures and two (2) breathing exercises specifically prescribed in Bikram Yoga in the same Asana Sequence, but altering the Dialogue with the addition, or substitution, of phrases and commands;

       (c) offering yoga classes employing the elements of Bikram Yoga, including the twenty-six (26) postures and two (2) breathing exercises specifically prescribed in Bikram Yoga in the same Asana Sequence, but failing to super-heat the room in which such classes are offered to 105° Fahrenheit, if at all;

       (d) offering yoga classes employing the elements of Bikram Yoga, including the twenty-six (26) postures and two (2) breathing exercises specifically prescribed in Bikram Yoga in the same

Asana Sequence, but with the inclusion of additional postures and/or words not authorized or endorsed by Bikram; and

(e) employing instructors to teach deceptively named and infringing yoga classes who are themselves engaged in infringing conduct and/or are the by-products of an unsanctioned (and, indeed, invalid and/or counterfeit) Bikram Yoga teacher certification programs and counterfeit certificates.

49.     As a result of Defendants' unauthorized uses of the Bikram Yoga style and method and the corresponding use or modification of the elements of the Dialogue and other of Bikram's Copyrighted Works and the Marks, consumers are misled into believing that YTTP is authorized to offer "Traditional Hot Yoga" and are not informed that, by offering the "Traditional Hot Yoga" class, Gumucio and YTTP are engaging in unlawful conduct.

50.     Defendants' unlawful and infringing conduct has been willful and deliberate, designed specifically to trade upon the goodwill associated with the Bikram's IP rights.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
(Copyright Infringement Against All Defendants)

51.     Plaintiffs hereby repeat and reallege the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

52.     Defendants' willful and continued unauthorized use in interstate commerce of the Bikram's Copyrighted Works is likely to deprive Bikram and BYCI of their exclusive rights, to continue to cause confusion and mistake, and to deceive the public in that it has and will continue to lead the public erroneously to associate the yoga and services offered by BYCI and Bikram with those offered by Defendants in violation of 17 U.S.C. §§ 101 et seq.

53.   Defendants have infringed and continue to infringe the copyrights in the Bikram's Copyrighted Works through substantial use of Bikram's Copyrighted Works in and as part of, among other things, Defendants': (a) offering of deceptively named and infringing yoga classes; and (b) training and purported certification of teachers to teach Bikram Yoga or other forms of yoga derived from Bikram Yoga.

54.   BYCI and Bikram are entitled to permanent injunctive relief restraining Defendants, and their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Copyright Laws of the United States.

55.   BYCI and Bikram are further entitled to recover damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement alleged above, in an amount greater than $1,000,000, according to proof to be determined at time of trial.

## SECOND CLAIM FOR RELIEF
### (Trademark Infringement Against All Defendants)

56.   Plaintiffs hereby repeat and reallege the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

57.   Defendants' willful and continued unauthorized use in interstate commerce of the Bikram's Marks is likely to deprive Bikram and BYCI of their exclusive rights, to continue to cause confusion and mistake, and to deceive the public in that it has and will continue to lead the public erroneously to associate the yoga and services offered by BYCI and Bikram with those offered by Defendants in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

58.   Defendants have infringed and continue to infringe the Bikram's Marks through substantial used of Bikram's Marks in and as part of Defendants': (a) offering of deceptively named and infringing yoga classes; and (b) training and

purported certification of teachers to teach Bikram Yoga or other forms of yoga derived from Bikram Yoga.

59.    BYCI and Bikram are entitled to permanent injunctive relief restraining Defendants, and their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Trademark Laws of the United States.

60.    BYCI and Bikram are further entitled to recover damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement alleged above, in an amount greater than $1,000,000, according to proof to be determined at time of trial.

### THIRD CLAIM FOR RELIEF
**(False Designation Against All Defendants)**

61.    Plaintiffs hereby repeat and reallege the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

62.    Defendants' willful and continued unauthorized use in interstate commerce of the Bikram's IP is likely to deprive Bikram and BYCI of their exclusive rights, to continue to cause confusion and mistake, and to deceive the public in that it has and will continue to lead the public erroneously to believe that Defendants' yoga and services are sponsored, approved and/or certified by BYCI and Bikram and are being marketed with the consent of BYCI and Bikram.

63.    If Defendants' acts are not enjoined by this Court, they will cause irreparable and substantial damage to Bikram, BYCI and its affiliates, for which there is no adequate remedy at law, and otherwise will result in Defendants being unjustly enriched by their unlawful acts.

64.    BYCI and Bikram are entitled to permanent injunctive relief restraining Defendants, and their officers, agents, and employees, and all persons

acting in concert with them, from engaging in any further such acts in violation of the Trademark and Copyright Laws of the United States.

65.     BYCI and Bikram are further entitled to recover damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement alleged above, in an amount greater than $1,000,000, according to proof to be determined at time of trial.

### FOURTH CLAIM FOR RELIEF
### (Dilution Against All Defendants)

66.     Plaintiffs hereby repeat and reallege the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

67.     Defendants' willful and continued unauthorized use in interstate commerce of the Bikram's IP has injured and threatens to further injure the business reputations of BYCI and Bikram and to dilute the distinctive quality of Bikram's IP.  Pursuant to California Business and Professions Code Section 14330, BYCI and Bikram are therefore entitled to permanent injunctive relief restraining Defendants, and their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Trademark and Copyright Laws of the United States.

68.     BYCI and Bikram are further entitled to recover damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement alleged above, in an amount greater than $1,000,000, according to proof to be determined at time of trial.

### FIFTH CLAIM FOR RELIEF
### (Unfair Competition Against All Defendants)

69.     Plaintiffs hereby repeat and reallege the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

70.    Defendants' willful and continued unauthorized use in interstate commerce of the Bikram's IP constitute an unfair business practice and a form of unfair competition, entitling BYCI and Bikram to permanent injunctive relief restraining Defendants, and their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Trademark and Copyright Laws of the United States pursuant to California Business and Professions Code §§ 17200 and 17203.

### SIXTH CLAIM FOR RELIEF
**(Unfair Business Practices Against All Defendants)**

71.    Plaintiffs hereby repeat and reallege the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

72.    Defendants' willful and continued unauthorized use in interstate commerce of the Bikram's IP has injured and threatens to further injure the business reputations of BYCI and Bikram and to dilute the distinctive quality of Bikram's IP.  Pursuant to California Business and Professions Code Section 14330, BYCI and Bikram are therefore entitled to permanent injunctive relief restraining Defendants, and their officers, agents, and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the Trademark and Copyright Laws of the United States.

73.    BYCI and Bikram are further entitled to recover damages, including attorneys' fees, they have sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of their acts of infringement alleged above, in an amount greater than $1,000,000, according to proof to be determined at time of trial.

### SEVENTH CLAIM FOR RELIEF
**(Breach of Contract Against Gumucio and Does 1 through 10)**

74.    BYCI hereby repeats and realleges the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

75.    Gumucio entered into an oral and implied in fact agreement at the time he entered Bikram Yoga Teacher Training.

76.    Except where otherwise excused due to the conduct of Defendants, BYCI has performed consistent with the terms of the agreement.

77.    Gumucio breached the agreement by, among other things, engaging in the conduct detailed more fully above.

78.    As a result of the breach, BYCI and Bikram have been damaged in an amount that is currently uncertain but is alleged to exceed $250,000.

**EIGHTH CLAIM FOR RELIEF**
**(Inducing Breach of Contract Against Yoga To The People, Gumucio And Does 1 through 10)**

79.    BYCI hereby repeats and realleges the allegations set forth in paragraphs 1 through 50, above, as though fully set forth herein.

80.    Since the commencement of the conduct more fully described above, YTTP and Gumucio have been aware that all certified Bikram Yoga instructors were required to sign the Teacher Training Agreement before they commenced the course of training that led to their becoming certified Bikram Yoga instructors.

81.    Defendants have solicited and induced certified Bikram Yoga instructors to teach Bikram Yoga, "Traditional Hot Yoga" and/or any form of yoga derived from Bikram Yoga at YTTP while their Teacher Training Agreements were effective.  By so doing, Defendants have induced those certified Bikram Yoga instructors to breach the terms of the Teacher Training Agreement.

82.    As a result of the breach, BYCI and Bikram have been damaged in an amount that is currently uncertain but is alleged to exceed $250,000.  BYCI and Bikram are also entitled to permanent injunctive relief restraining Defendants from inducing the breach of the Teacher Training Agreements in a manner which infringes on Bikram's IP.

1

## PRAYER FOR RELIEF

2      **WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

3      ### FOR THE FIRST CLAIM FOR RELIEF

4
5      1.     For damages in an amount to be proven at trial, but which is believed
to exceed $1,000,000.

6
7      2.     For punitive damages in an amount to be proven at trial.

8      3.     For a preliminary and permanent injunction barring subsequent
9      infringement of Plaintiffs' Copyrighted Works.

10     4.     For an order permitting the seizure and destruction of unlawful and
11     counterfeit reproductions of Bikram's IP.

12
13     5.     At Plaintiffs' election, for statutory damages for willful infringement
pursuant to 17 U.S.C. Section 504(c).

14

15     ### FOR THE SECOND CLAIM FOR RELIEF

16     6.     For damages in an amount to be proven at trial, but which is believed
17     to exceed $1,000,000.

18     7.     For punitive damages in an amount to be proven at trial.

19
20     8.     For a preliminary and permanent injunction barring subsequent
infringement of Plaintiffs' Marks.

21
22     9.     For an order permitting the seizure and destruction of unlawful and
23     counterfeit reproductions of Bikram's IP.

24     10.    At Plaintiffs' election, for statutory damages for willful infringement
25     pursuant to 15 U.S.C. Section 1117(c).

26

27

28

### FOR THE THIRD CLAIM FOR RELIEF

11.   For damages in an amount to be proven at trial, but which is believed to exceed $1,000,000.

12.   For a preliminary and permanent injunction barring subsequent infringement of Plaintiffs' IP.

### FOR THE FOURTH CLAIM FOR RELIEF

13.   For damages in an amount to be proven at trial, but which is believed to exceed $1,000,000.

14.   For a preliminary and permanent injunction barring subsequent infringement of Plaintiffs' IP.

### FOR THE FIFTH CLAIM FOR RELIEF

15.   For a preliminary and permanent injunction barring subsequent infringement of Plaintiffs' IP.

### FOR THE SIXTH CLAIM FOR RELIEF

16.   For a preliminary and permanent injunction barring subsequent infringement of Plaintiffs' IP.

### FOR THE SEVENTH CLAIM FOR RELIEF

17.   For damages in an amount to be proven at trial, but which is believed to exceed $250,000.

### FOR THE EIGHTH CLAIM FOR RELIEF

18.   For damages in an amount to be proven at trial, but which is believed to exceed $250,000.

19.   For a preliminary and permanent injunction barring the inducement of breach of contract in a manner in which infringes on Plaintiffs' IP.

**FOR ALL CAUSES OF ACTION**

20.   For costs of suit incurred herein, including attorney's fees as permitted by statute; and

21.   For such other relief as the court deems just and proper.

September 26, 2011        Respectfully submitted,

SILVERMAN SCLAR SHIN & BYRNE LLP

By: _____

Robert M. Gilchrest

For Plaintiffs

BIKRAM'S YOGA COLLEGE OF INDIA, L.P. and BIKRAM CHOUDHURY

1

## DEMAND FOR JURY TRIAL

2

    Plaintiffs demand a trial by jury in this action with respect to those matters

3

triable to a jury.

4

5

    September 2⅙, 2011    Respectfully submitted,

6

    SILVERMAN SCLAR SHIN & BYRNE LLP

7

8

    By: _____

9

    Robert M. Gilchrest

10

    For Plaintiffs

11

    BIKRAM'S YOGA COLLEGE OF INDIA, L.P.

12

    and BIKRAM CHOUDHURY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28